80 U.S. 413
 20 L.Ed. 637
 13 Wall. 413
 KITCHEN
v.
BEDFORD.
 December Term, 1871
 
 ERROR to the Circuit Court for the District of Missouri.
 Kitchen, a citizen of Arkansas, brought trover in the court below against a certain Bedford and one Webber, for the conversion of one hundred and nineteen bonds of the Cairo and Fulton Railroad Company, for $1000 each, dated October 1st, 1857, and payable in New York in 1882, with semi-annual interest represented by interest warrants annexed to the bonds. The conversion was laid as on the 1st of December, 1866. Plea, 'Not guilty.' A jury being waived, the cause was tried by the court in May, 1870, and judgment rendered for the defendants. A bill of exceptions was taken, however, from which it appeared that on the trial evidence was given tending to establish the following facts, to wit:
 The plaintiff, on the 16th of March, 1866, being owner of the bonds described in the declaration, gave them to his wife, and put them in the hands of one W. C. Rayburn, on the terms and for the purposes set out in the following writing, which Rayburn executed under seal, to wit:
 'WALCOT, ARKANSAS, March 16th, 1866.
 'Received from Martha Kitchen, the sum of one hundred and nineteen thousand dollars in bonds of the Cairo and Fulton Railroad Company of Missouri, and I also received fifty thousand four hundred and five dollars of coupons or interest warrants, due and owing by said company, amounting in the aggregate to the sum of one hundred and sixty-nine thousand four hundred and five dollars, which said sum I promise to expend in the purchase of lands from John Moore, John Wilson, and Albert G. Waterman, trustees of the said railroad company of Missouri, at or near the average price of five dollars per acre, taking the deeds in my own name; and I further promise to sell all the lands purchased as aforesaid, as soon as possible, at such prices as the said Kitchen may direct, and if I should fail to sell all said lands, as soon as said Kitchen may desire, then I promise to sell the same at public auction, whenever so directed by the said Kitchen, and after deducting the expenses of stamps and necessary travelling expenses, to pay unto the said Martha Kitchen, or her legal representatives, seven-eighths of all the money that I may sell the said lands for. Given under my hand and seal the date above written.
 [SEAL]
 'W. C. RAYBURN.'
 Rayburn having received the bonds for the purpose thus indicated, in December, 1866, sold and delivered them to the defendant Bedford, for $10,000, and he sold and delivered them to defendant Webber, who afterwards sold them for $26,340, each knowing, when purchasing, the purposes for which Rayburn held them, as expressed in the writing. A demand for the bonds and coupons, was made by the plaintiff of the defendants before the suit was brought.
 The court declared that, on this evidence the plaintiff could not recover, and the plaintiff having excepted, now brought the case here accordingly
 
 Messrs. Carlisle and McPherson, for the plaintiff in error:
 
 The bonds were those of the Cairo and Fulton Railroad Company, and were 'put in the hands' of Rayburn 'to expend in the purchase of lands from the trustees of the company;' a most natural use of them; since in so using them, they could be used as money, and their full or best value got; the only way it is obvious in which they could be so used, or such value could be got. The case, then, is that of a delivery of a thing in trust upon an agreement to conform to the purpose of the trust. But this is the definition of a bailment, not of a sale. The transaction indeed has no aspect of a sale.
 These bonds having been disposed of in a way different from the specific one for which they were given to Rayburn, there has been a conversion, and trover lies.
 
 Mr. T. T. Gantt, contra:
 
 1. A fair construction of the paper is, that the bonds and coupons were absolutely sold to Rayburn at par, and that he stipulated to invest this par value in lands, as prescribed in the bond. It is declared expressly that he has received two sums of money amounting to $169,405, 'which said sum' he promises to expend in the purchase of lands, &c.; that is to say, he takes the bonds, charges himself with their par value, and agrees to invest that amount or 'sum' in the purchase of lands.
 The case shows nothing of the value of the bonds in December, 1866; nor anything to show that the price at which—as we suppose Rayburn took them, was not their then true market price. It is obvious from the difference between the price at which Bedford bought them and that at which he sold them, that the bonds were bonds having what is known as 'a speculative value;' an immense class of bonds in this country. If $169,405 was a fair market value, every presumption is in favor of a sale, rather than of a bailment. If this view is right, and Rayburn has not invested—a matter not shown on the other side, nor by us admitted—then a suit for breach of covenant lies against him; but not trover against his vendees.
 But certainly if there was a trust, it was a trust with a power to sell, and invest proceeds. The sale has been made, and non constat but that the proceeds have been invested. Embezzlement is not to be presumed; and it is not proved. Whether invested or not invested—no charge of fraud at all being made as respects them—suit cannot be maintained against the vendees for making a purchase under a sale authorized and obligatory. As matter of fact, there is no proof that the prices paid by both Bedford and Webber—great as the difference between them was—were not both true market prices at this time. In 'fancy stocks' fluctuations are violent.
 2. But Kitchen had given the bonds to his wife, and Rayburn receives them from her. The husband does not once appear in the history, after his gift. The wife should have been joined with the husband as plaintiff.
 Reply: The husband had owned the bonds, and he it was who 'put them in the hands of Rayburn.' As between husband and wife, no valid gift could be made to her; and if the bonds had been delivered to her when the husband resumed possession they would become his own. The receipt is to be construed in connection with the rest of the evidence, which shows that the bonds were received from the plaintiff, and were his property, and were intended to be dedicated to his wife's use in the manner provided in the receipt. But all this is unimportant. The husband alone can bring trover for conversion of the wife's chattels.
 Mr. Justice BRADLEY delivered the opinion of the court.
 
 
 1
 Supposing the facts upon the evidence of which the court below declared that the plaintiff could not recover, to have been sufficiently proven, it seems to us that the court erred in taking the view of the case which it did. Rayburn had possession of the bonds for the purpose of purchasing therewith, for the benefit or Mrs. Kitchen, lands of the railroad company which had issued them, 'at or near the average price of five dollars per acre.' Instead of doing this, as he was bound, he sold them to Bedford for six cents on the dollar; and Bedford sold them to Webber at a hundred and fifty per cent. advance, both knowing the object for which Rayburn held the bonds. A clearer case of fraudulent breach of trust, it is difficult to conceive, and the defendants being participes criminis, were bound to deliver the bonds and coupons to the plaintiff when he demanded them.
 
 
 2
 It is contended that by the fair construction of the paper, Rayburn was to sell the bonds for what he could get, and invest the proceeds in lands, and non constat that he has not done so; or at all events, the defendants, as purchasers from Rayburn, have good title to the bonds, because he was invested with a trust to sell them. But the paper does not so read. It declares that Rayburn had received 'the sum of one hundred and nineteen thousand dollars in bonds of the Cairo and Fulton Railroad Company, and fifty thousand four hundred and five dollars of coupons, &c., amounting in the aggregate to the sum of one hundred and sixty-nine thousand four hundred and five dollars, which said sum, I promise to expend in the purchase of lands, &c., at or near the average price of five dollars per acre.' In other words, he was to purchase lands with the bonds and coupons at five dollars per acre, not with the proceeds of them, after being sold at a nominal price. He was to procure an acre for every five dollars of the bonds and coupons. That was the trust which he assumed. If he was unable to perform it, he should have returned the bonds, and not have sold them at six cents on the dollar. The defendants, when they bought them under these circumstances, did so at their peril, and were bound to restore the bonds to the plaintiff. Having refused to do this, they were liable to him for the fair value of the bonds at the time of the demand
 
 
 3
 Mrs. Kitchen was not a necessary party to the suit. The bonds were never hers in law. By the laws of Arkansas, a husband cannot legally make a gift to his wife during the marriage. He could not do so at the common law, and the statute of Arkansas which enables a married woman to take and hold property in her own right, expressly provides that no conveyance from a man to his wife, directly or indirectly, shall entitle her to any benefits or privileges of the act.*
 
 
 4
 Perhaps he might have made an equitable gift for her benefit. But in this case, the husband had not parted with the legal title to the bonds, and had a right to call any person to account who unlawfully converted them.
 
 
 5
 JUDGMENT REVERSED, with directions to award a venire denovo.
 
 
 6
 Mr. Justice STRONG stated that he was unable to construe the contract upon which the plaintiff relied, as it was construed by a majority of the court, and for that reason, among others, he dissented from the judgment.
 
 
 
 *
 Digest of Statutes of Arkansas, p. 765, tit. Married Women.